Filed 2/28/24  In re Kakowski CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| In re BRIAN KAKOWSKI<br><br>on<br><br>Habeas Corpus. | D080001<br><br>(San Diego County<br>Super. Ct. No. HSC11878) |


Original proceeding on a petition for writ of habeas corpus.  Order to show cause discharged and petition dismissed.

Brian Kakowski, in pro. per.; and Gerald J. Miller, under appointment by the Court of Appeal, for Petitioner.

Rob Bonta, Attorney General, Heather M. Heckler, and Rachael Anne Campbell, Deputy Attorneys General, for Respondent.

INTRODUCTION

Brian Kakowski, a prisoner in the custody of the California Department of Corrections and Rehabilitation (Department), petitions this court for writ of habeas corpus.  He raises an equal protection challenge to a Department policy permitting transgender female inmates, but not cisgender male inmates, to possess certain personal hygiene items.  While Kakowski's petition was pending, the Department changed its policy so as to make the subject hygiene items available to both cisgender male inmates and

transgender female inmates. We conclude this development has made Kakowski's petition for writ of habeas corpus moot. Accordingly, the order to show cause is discharged and the petition dismissed.

BACKGROUND

In February 2022, Kakowski filed with this court a petition for writ of habeas corpus challenging a Department policy that prohibited cisgender inmates housed at male institutions from accessing certain hygiene products—specifically, tweezers, emery boards, shower caps, and facial scrub—while allowing such access to transgender inmates and inmates having symptoms of gender dysphoria housed at male institutions. He asserted the policy violated his rights to equal protection. (Cal. Const., art. I, § 7, subd. (a); U.S. Const., 14th Amend.)

The difference in inmate access to the specified hygiene products was the result of two sets of personal property schedules incorporated by reference in title 15, section 3190 of the California Code of Regulations. (See Cal. Code Regs., tit. 15, § 3190, subds. (b), (e).) Under the first set of schedules, the Authorized Personal Property Schedules (APPS), an inmate's right to possess personal property depended on the type of institution (male or female) and security level in which the inmate was housed. (See Cal. Code Regs., tit. 15, § 3190, subd. (b).) In 2017, the Department added a second schedule, the newly created Transgender Inmates Authorized Personal Property Schedule (TIAPPS), which was "a separate list of allowable personal property afforded to transgender inmates and inmates with symptoms of gender dysphoria as identified and documented . . . by medical or mental health personnel within a CDCR institution." (See Cal. Code Regs., tit. 15, § 3190, former subd. (d), now subd. (e).)

2

The TIAPPS listed emery boards, facial cleanser, shower caps, and tweezers as personal property items available to transgender inmates and inmates with symptoms of gender dysphoria who were housed in general population levels I, II, III, and IV of male institutions. However, these toiletries were not listed in the APPS. By including these items in the TIAPPS but not in the APPS, the Department allowed transgender inmates and inmates with symptoms of gender dysphoria to possess them while denying them to cisgender male inmates housed in the same institutions at the same security levels. This gender-identity-based difference in access to the specified hygiene items was the disparate treatment Kakowski challenged as an equal protection violation.

After requesting and receiving an informal response to Kakowski's petition from the Attorney General on behalf of the Department, we issued an order summarily denying Kakowski's petition. Kakowski then successfully sought review in the California Supreme Court. In August 2022, the matter was transferred back to this court with directions to vacate the summary denial and issue an order directing the Department to show cause why relief should not be granted on the ground that the Department's policy violated the equal protection clauses of the state and federal Constitutions. We vacated our summary denial, issued the order to show cause as directed, and arranged for Kakowski to be represented by appointed counsel. In January 2023, Kakowski, now represented by appointed counsel, filed a supplemental writ petition.[1] In May, the Department filed its return, and in June, Kakowski filed a traverse.

---

[1] This was actually the second supplemental petition filed on behalf of Kakowski. The first supplemental petition was prepared and submitted in November 2022 by an attorney whose appointment Kakowski subsequently challenged. We construed Kakowski's challenge as a motion pursuant to

3

While Kakowski's petition was pending, however, effective November 2023, the Department revised the APPS. (See Cal. Code Regs., tit. 15, § 3190, subd. (b) [incorporating schedules with revision date of "11/23"]; California Department of Corrections and Rehabilitation, Authorized Personal Property Schedule <https://www.cdcr.ca.gov/regulations/wp-content/uploads/sites/171/2023/10/Authorized-Personal-Property-Schedule.pdf> [as of Feb. 27, 2024] archived at <https://perma.cc/LT6N-US8R>.) The newly amended APPS authorizes inmates housed in general population levels I, II, III, and IV of male institutions to possess, among other things, emery boards, facial cleanser, shower caps, and tweezers. Thus, it is no longer Department policy to deny cisgender inmates access to these items. In its notice of regulatory change, the Department states that it revised the APPS "to ensure gender equality within the [D]epartment's inmate population." (Initial Statement of Reasons (Dec. 15, 2023), p. 4, <https://www.cdcr.ca.gov/regulations/wp-content/uploads/sites/171/2023/12/NCR_23-15_Restriced_Housing_Units.pdf> [as of Feb. 27, 2024] archived at <https://perma.cc/8HBC-UXH7>.)

In light of this development, we issued an order directing the parties to submit supplemental briefs addressing whether Kakowski's petition for writ of habeas corpus had been rendered moot by the Department's revisions to the APPS. (See *City of Hollister v. Monterey Ins. Co.* (2008) 165 Cal.App.4th 455, 479–480 [appellate court may examine mootness on its own motion].) In response, the Attorney General agreed that it had been rendered moot. Kakowski, however, asserted that it had not. He attached to his

---

*People v. Marsden* (1970) 2 Cal.3d 118, granted the *Marsden* motion, and struck the original supplemental petition. A new attorney was then appointed to represent Kakowski, and the operative supplemental petition was filed in January 2023.

4

supplemental brief a copy of a document that he described as a January 2024 "Canteen Price List" for the Robert J. Donovan Correctional Facility, where he is currently housed. The document, which was not authenticated, set forth prices for apricot scrub, emery boards, and tweezers; next to these items was a notation stating "TRANSGENDER CARD REQUIRED." Kakowski argued his petition was not moot because, based on this document, "the policy of equal access to the subject items has *apparently* not been fully implemented." (Italics added.)

## DISCUSSION

Ordinarily, we do not review questions that have become moot. "As a general rule, an appellate court only decides actual controversies. It is not the function of the appellate court to render opinions 'upon moot questions or abstract propositions, or . . . declare principles or rules of law which cannot affect the matter in issue in the case before it.'" (*People v. Rish* (2008) 163 Cal.App.4th 1370, 1380, some internal quotation marks omitted.) "'Thus, appellate courts as a rule will not render opinions on moot questions[.]'" (*In re Stephon L.* (2010) 181 Cal.App.4th 1227, 1231.)

We conclude that Kakowski's petition for writ of habeas corpus has been rendered moot by the Department's November 2023 revision of the APPS. "A case becomes moot when events 'render[ ] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief.'" (*In re D.P.* (2023) 14 Cal.5th 266, 276, some internal quotation marks omitted.) That is what has occurred here. Kakowski's petition challenged the Department's statewide policy of differential access to the subject hygiene items. In his supplemental petition, he identified title 15, section 3190 of the California Code of Regulations, to the extent it incorporated the APPS and TIAPPS, as the assertedly discriminatory policy

5

and asked us to "invalidate the subject policy and regulations"; in his traverse, he reiterated his attack and requested the same relief. Our order to show cause required the Department to defend its policy against Kakowski's claim that it violated equal protection. It has now revised that policy, and it has expressly done so to ensure gender equality in its inmate population. To declare the Department's now-defunct policy invalid on equal protection grounds would be a meaningless gesture.

To the extent Kakowski asserts, based on the January 2024 "Canteen Price List," that the change in Department policy has "apparently" not yet been fully implemented, we disagree he has identified a circumstance sufficient to render his petition not moot. The relevant question for purposes of determining mootness is whether a favorable decision on the merits of Kakowski's petition would grant effective relief. (*In re D.P.*, *supra*, 14 Cal.5th at p. 276.) "For relief to be 'effective,' two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks." (*Ibid.*) The circumstance Kakowski identifies fails to satisfy these requirements. For one thing, his assertion of an "apparent" failure to implement the Department's recent change in policy falls short of establishing an *actual*, as opposed to a *possible*, ongoing harm. Courts do not redress potential violations of law. (Cf. *ibid.* ["A court is tasked with the duty ' "to decide *actual controversies* by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." ' " (Italics added)].) For another, Kakowski's petition sought an order declaring the Department's policy to be invalid; he did not seek an order compelling the Department to comply with an assertedly valid

6

policy.  For this reason, the harm Kakowski identifies as a basis for avoiding mootness is not one that is "capable of being rectified by the outcome [he] seeks."  (*Ibid.*)

We therefore conclude that Kakowski's petition has been rendered moot by the Department's November 2023 revisions of the APPS.  "The proper disposition of a moot case is dismissal."  (*In re Miranda* (2011) 191 Cal.App.4th 757, 762.)

DISPOSITION

The order to show cause is discharged, and the petition for writ of habeas corpus is dismissed as moot.

DO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.

7